ALICE PENMAN,                                              PLAINTIFF

v.

CORRECT CARE SOLUTIONS, et al.,                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendant Robert Harris has moved to strike multiple paragraphs from Plaintiff Ms. Penman's Amended Complaint. (R. 46). Ms. Penman has responded (R. 51), and this matter is now ripe for adjudication. For the reasons that follow, the Court DENIES IN PART AND GRANTS IN PART the Defendants' Motion to Strike Plaintiff's Amended Complaint. (R. 46).

BACKGROUND

Ms. Penman's Amended Complaint brings excessive force, deliberate indifference, failure to intervene, supervisory liability, municipal liability, negligence, and intentional infliction of emotional distress claims against multiple defendants for events alleged to have taken place at Kentucky State Penitentiary that resulted in inmate Marcus Penman's death. Defendant, Robert Harris, now moves the Court to strike paragraphs 7 and 9-14 from Ms. Penman's Amended Complaint as "immaterial or scandalous statements designed to improperly elicit sympathy, to curry favor, or to cast dispersions on the defendants."

STANDARD

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike portions of the pleading acting on its own initiative or "on a motion made by a party . . . before responding to the pleading." *Id.* Courts are given considerable discretion in deciding whether to strike portions of pleadings under 12(f). *See id.*; *see also Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992). Courts have generally decided to strike portions of a pleading for being impertinent or scandalous only where the language is extreme or offensive. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir.1981)) ("[I]f the complaint or other pleadings are abusive or contain offensive language, they may be stricken sua sponte under the inherent powers of the court."); *Talbot*, 961 F.2d at 665 (district court did not abuse its discretion in striking paragraphs in a complaint that insinuated defendants knowingly caused a salmonella outbreak where there was no factual basis for such assertions); *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 617-18 (1st Cir. 1988) (district court did not abuse its discretion in striking provisions of a complaint that used phrases like "concentration camp," "brainwash," "torture," and "Chinese communists in Korea" to describe a work environment). "Scandalous allegations" generally means "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003); *see also In re 2TheMart.com Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) (defining scandalous allegations as placing "cruelly derogatory light on a party or other person."). "An allegation is 'impertinent' or 'immaterial' when it is not relevant to

2

the issues involved in the action." *L and L Gold Associates, Inc. v. American Cash for Gold, LLC*, 2009 WL 1658108, at *1 (E.D. Michigan Southern Division June 10, 2009) (quoting *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004)).

DISCUSSION

Frankly, the Court must note that Ms. Penman's Amended Complaint comes off as over-the-top in certain portions. The Court must note further that such hyperbole, as used in portions of Ms. Penman's Complaint, is generally ill advised. Typically, such phrasing and language distracts more than it does anything else, particularly when—as is the case here—the conduct alleged speaks loudly enough for itself. However, the bar for striking pleadings is a high one, and motions to strike are generally disfavored. *See Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (holding that because it is a drastic remedy, "the action of striking a complaint should be used sparingly by the courts"); *CWI, Inc. v. SmartDog Servs., LLC*, No. 1:15-CV-00139-GNS, 2016 U.S. Dist. LEXIS 60786, at *8 (W.D. Ky. May 6, 2016) ("In general, such motions are disfavored and infrequently granted in this jurisdiction.") (citing *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015))). While the Court recognizes that some of Ms. Penman's Amended Complaint may be slightly histrionic in spots, with the exception of paragraph 10, the Court does not find it scandalous or impertinent. However, to be thorough, the Court will examine each of the paragraphs from Ms. Penman's Amended Complaint that Harris seeks to strike.

A. Paragraph 7

Harris seeks to strike the following portion of paragraph 7, ". . . Mr. Penman spent his final moments in this world shackled, in darkness, desperately gasping for his last breath. He died alone

and in unimaginable pain, never to see daylight again." (Pl.'s Am. Compl., p. 3: ¶ 7). Mr. Penman, in fact, died at Kentucky State Penitentiary, and the Amended Complaint alleges his death was the result of harms that would have been objectively painful. Thus, these statements are relevant to Ms. Penman's claims, and although the word choice and phrasing might be ill advised, it does not rise to the level of scandalous so that it must be stricken.

B. Paragraph 9

Harris seeks to strike the following portion of paragraph 9:

> On the same day that KSP and Correct Care Solutions employees callously tortured Mr. Penman to death, KSP officials falsely stated to members of the Kentucky media, that all evidence pointed to Mr. Penman's death being the result of self-inflicted injuries. They continued this false narrative when they told Penman's family and wife that his death was the result of suicide.

(Pl.'s Am. Compl., p. 3: ¶ 7). Harris basically claims that this passage should be stricken because it is not true. The Court is not satisfied that these statements are "obviously false" or "clearly injurious to a party because of the language used" so as to require the Court to strike them. *Pessin v. Keeneland Asso.*, 45 F.R.D. 10, 13 (E.D. Ky. 1968). In any event, the Court finds a motion to strike an improper tool to resolve disputed questions of fact and law. Such determinations are better left until after discovery. *See SEC v. Toomey,* 866 F. Supp. 719, 722 (S.D.N.Y. 1992) ("It is particularly important to refrain from considering disputed questions of law when, as in this case, there has been no significant discovery."). Furthermore, these allegations are pertinent to Ms. Penman's supervisory liability claims.

C. Paragraph 10

Harris seeks to strike paragraph 10's allegation that the Defendants' conduct "evokes painful memories of the worst chapter of nation's history." (Pl.'s Am. Compl., p. 4: ¶ 10). The Court finds the statement inflammatory. But more importantly, the Court sees no way in which the

4

memories, painful or otherwise, invoked by the Defendants' Conduct are relevant to the substance or merits of Ms. Penman's claims. Inflammatory statements may not necessarily warrant being stricken. *See Cobell v. Norton*, 224 F.R.D. 266, 283 (D.D.C. 2004) ("While such statements may be inflammatory, and perhaps ill-advised, they simply do not rise to the level of 'scandalous' sufficient to warrant relief under Rule 12(f)."). But the statement in question is inflammatory *and* irrelevant. Simply put, the passage is a step too far. The Court will strike this statement from Ms. Penman's Amended Complaint.

D. Paragraph 11

Harris seeks to strike paragraph 11 in its entirety. It reads as follows:

> Unfortunately, there are other examples of unconstitutional mistreatment in KSP's more recent history. For instance, in 2011, high-ranking officials of the Kentucky Department of Corrections ("KDOC") were specifically informed that discovery in federal litigation had shown that Clifford Warfield, a KSP inmate with a documented history of bowel obstructions, and who began to exhibit the classic signs and symptoms of a bowel obstruction, was instead diagnosed by the KSP physician as malingering and placed in disciplinary segregation where he was considered to be on a "hunger strike." In the five days that followed, Mr. Warfield was incapable of eating or drinking, his insides turned gangrenous, and his condition became terminal, all under the supervision of correctional staff and a medical staff that was too afraid of the physician to challenge his neglect of a helpless, desperately sick man.

(Pl.'s Am. Compl., p. 4: ¶ 11). The paragraph's language is not scandalous, and the allegations Maybe highly relevant to Ms. Penman's supervisory liability claim. Thus, the there is no basis to strike paragraph 11.

E. Paragraph 12

Harris seeks to strike paragraph 12 in its entirety. It reads as follows:

> In January 2014, another KSP inmate, James Embry ("Mr. Embry"), literally **starved to death**, over a period of forty-five (45) days, as responsible medical and correctional personnel at KSP idly and callously sat by and watched. Mr. Embry's death was a direct result of his serious and untreated mental health disorders. Medical and mental health staff at KSP flatly refused to provide Mr. Embry with medically necessary mental health medication and treatment, despite his pleas for help and blatant need. As his mental health

5

> needs were ignored, he slipped further and further into insanity, and began missing meals. As a symptom of his untreated psychosis, Mr. Embry lost interest in eating. By the time of his death, on January 13, 2014, Mr. Embry had missed ***thirty-five (35) of his last thirty-six (36) meals***. Correctional, medical and mental health staff at KSP did nothing as Mr. Embry slowly withered away before their eyes.

(Pl.'s Am. Compl., pp. 4-5: ¶ 12) (emphasis in the original). Like paragraph 11, paragraph 12 is relevant to Ms. Penman's supervisory liability claim and contains no scandalous language. Thus, it will not be stricken.

    F.  Paragraph 13

Harris seeks to strike paragraph 13 in its entirety. It reads as follows:

> At the conclusion of KDOC's own investigation into Mr. Embry's death, it was determined that "[t]he death of Inmate James Embry occurred as the result of a systemic failure at the [KSP]…." DOC Critical Incident Review, 2/27/14 (emphasis added). So, too, Mr. Penman's suffering and death occurred as a result of systemic failures at KSP.

(Pl.'s Am. Compl., pp. 5: ¶ 13). The allegations in this paragraph are pertinent to Ms. Penman's claims and contain nothing that could be considered scandalous. The paragraph will not be stricken.

    G.  Paragraph 14.

Harris seeks to strike the following portion of paragraph 14, "[l]ike many other KSP inmates, Mr. Penman fell victim to this culture of indifference and suffered the most undignified death imaginable." (Pl.'s Am. Compl., pp. 5: ¶ 14). The sentence is relevant to Ms. Penman's claims, and while the phrase "suffered the most undignified death imaginable" might toe the line, it does not rise to the level of scandalous. This portion of paragraph 14 will not be stricken.

CONCLUSION

For the foregoing reasons, it is hereby ordered as follows:

The Defendant Robert Harris's Motion to Strike Plaintiff's Amended Complaint (R. 46) is HEREBY DENIED IN PART AND GRANTED IN PART.

The portion of paragraph 10 reading, "[i]t evokes painful memories of the worst chapters in our nation's history" is HEREBY STRICKEN from the Plaintiff's Amended Complaint. All remaining portions of the Amended Complaint shall remain.

**IT IS SO ORDERED.**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

November 26, 2018

cc: Counsel of Record