UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:18-CV-00058-TBR-LLK

ALICE PENMAN PLAINTIFF

v.

CORRECT CARE SOLUTIONS, LLC,
*et al.* DEFENDANTS

**OPINION & ORDER**

Senior Judge Thomas B. Russell referred this matter to U.S. Magistrate Judge Lanny King for ruling on all discovery motions. [DN 73].

This matter is now before the Court on two motions: (1) Correct Care Solutions, LLC's ("CCS"), Motion to Strike Plaintiff's Response to its Motion for Protective Order, [DN 112], to which Plaintiff Alice Penman responded in opposition, [DN 114]; and (2) CCS' Motion for Protective Order, [DN 108], to which Plaintiff responded in opposition and CCS replied, [DN 111, 112-2]. Both are now ripe for adjudication.

For the reasons set forth herein, the Court grants in part and denies in part CCS' Motion to Strike and denies CCS' Motion for Protective Order.

**BACKGROUND**

This matter arises from a series of incidents in which Plaintiff alleges, *inter alia,* that Decedent Marcus Penman was seriously mistreated and improperly cared for while an inmate at the Kentucky Statement Penitentiary ("KSP"), which led to his death on April 25, 2017. [DN 1]. CCS is alleged to have been responsible, in part, for Mr. Penman's medical and mental health care at KSP. *Id.* at 6.

As a result of these alleged incidents, Plaintiff filed suit in the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331. *Id.* at 5.

Therein, Plaintiff asserted multiple claims against CCS and others, which included claims for excessive use of force, deliberate indifference to a serious medical and/or mental health need, failure to intervene/protect, and negligence. *Id.*

In discovery, Plaintiff issued a subpoena *duces tecum* to the Kentucky Department of Corrections ("KDOC") and it responded on July 3, 2019. [DN 108]. Included in KDOC's production was a three-page document entitled Mortality & Morbidity Report and Review (the "Report"), with the heading "Patient Safety Work Product – PSWP / This document is protected from further disclosure pursuant to 42 U.S.C. § 299b-22" on each of the three pages. *Id*. at 652.

On September 3, 2019, CCS emailed all parties' counsel to assert a privilege over the Report, claiming it is protected by the patient safety work product privilege. [DN 1-1]. CCS asked the parties' counsel to destroy their respective copies of the Report and, if unwilling to comply, to notify CCS of same. *Id*. CCS claims, and Plaintiff does not dispute, that Plaintiff's counsel never responded to that email. [DN 108].

On March 4, 2020, the Parties deposed Officer Steven Sargent. *Id.* There, CCS' counsel learned that Plaintiff still had a copy of the Report. CCS' counsel again asserted that Report was protected by the patient safety work product privilege. Despite this assertion, Plaintiff's counsel "used the document when questioning the witness, presented the document to the witness, and read portions of the document into the record." *Id*. at 652.

CCS now moves the Court to enter a protective order that would protect the Report from further disclosure, require the parties to destroy or return any copies of it, and would exclude any evidence derived from it. *Id.* Further, CCS moves to strike Plaintiff's Response to the Motion for Protective Order for being untimely. [DN 112]. The Court shall address both motions below.

**MOTION TO STRIKE**

As an initial matter, the Court must first address CCS' pending Motion to Strike Plaintiff's Response to its Motion for Protective Order, [DN 112].

On March 20, 2020, the Court granted CCS' request for leave to file a motion for protective order, setting a briefing schedule for same. [DN 103]. CCS then moved for an extension of those deadlines, [DN 105], which was granted, [DN 107]. Under the new deadlines, CCS' Motion for Protective Order was to be filed by April 7, 2020, any response by April 17, 2020, and any reply by April 24, 2020. *Id.*

CCS timely filed its Motion for Protective Order on April 7, 2020. [DN 108]. The April 17, 2020, response deadline then passed without any request for an extension. On April 29, 2020, twelve days after the response deadline, Plaintiff filed her Response to the Motion for Protective Order. [DN 111]. Nowhere in Plaintiff's Response does it acknowledge the lateness of her Response, attempt to excuse its tardiness, or request leave to file a late response. *Id*.

On May 18, 2020, CCS moved to strike Plaintiff's late Response, or in the alternative, requested leave to file an attached Reply in support of its Motion for Protective Order. [DN 112]. Under Local Rule 7.1(c), responses to a motion are due within twenty-one days of service of that motion, unless the motion requests an extension of time. Plaintiff's response to CCS' Motion to Strike was, therefore, due by June 8, 2020.

Once again, Plaintiff's filing was late. Plaintiff filed her Response to the Motion to Strike on June 9, 2020, and again failed to acknowledge the late filing, failed to offer any excuses for it, and failed to request leave to file a late response. [DN 114].

In that Response, Plaintiff explains that her Response to CCS' Motion for Protective Order was late due to complications from Plaintiff's counsel working at home due to the COVID-19

global health pandemic. *Id*. at 700. Plaintiff argues that the Motion to Strike should be denied because the late Response was the result of excusable neglect and, ultimately, did not prejudice CCS. *Id*. Plaintiff further argues that the Court should not consider CCS' proposed Reply because it was untimely and suffered from other defects.[1] *Id*.

The Court is cognizant of the impact the COVID-19 pandemic has had on all aspects of society, including the practice of law. Those complications, however, have not prevented attorneys in cases throughout this Court's docket from requesting extensions to deadlines, or leave to make filings past expired deadlines. Neither was done in this case.

With that said, in an effort to resolve CCS' Motion for Protective Order on its merits, rather than procedural issues, this Court will deny CCS' Motion to Strike in part. Plaintiff's Response to the Motion for Protective Order will not be stricken; however, CCS shall be granted leave to file its Reply in support of its Motion for Protective Order and the Court shall consider same in resolving the issues therein.

## MOTION FOR PROTECTIVE ORDER

CCS moved for a protective order and other relief to protect the Mortality & Morbidity Report and Review, arguing it is entitled to the patient safety work product privilege under the Patient Safety Quality Improvement Act of 2005 ("PSQIA"). Because CCS has failed to meet its burden of demonstrating the privilege's application to the Report, the Motion for Protective Order must be denied.

Under the PSQIA, patient safety work product is entitled to confidentiality and is privileged if it is created for the purpose of reporting to a patient safety organization ("PSO") and is so

[1] The Court notes that Plaintiff asserts her objection to CCS' proposed Reply, at least in part, for timeliness, in Plaintiff's untimely Response to CCS' Motion to Strike Plaintiff's untimely Response to CCS' Motion for Protective Order.

reported. 42 U.S.C.A. § 299b. Under this statutorily-created privilege, certain types of patient safety work product, identifiable patient safety work product, can maintain its privilege after disclosure. 42 U.S.C.A. § 299b-22(d).

Here, CCS contends that the Report is identifiable patient safety work product that would maintain its privilege and confidentiality even after disclosure. [DN 108]. Plaintiff, however, argues that CCS' proof in support of its Motion is insufficient and that, ultimately, the privilege does not apply to the Report. [DN 111].

As a threshold matter, this Court must first consider whether the Report constitutes patient safety work product ("PSWP") under the PSQIA. CCS, as the party asserting the privilege, bears the burden of proving that the Report falls within the definition of PSWP and that no exclusionary language applies. *See Johnson v. Cook County*, 2015 WL 5144365, at *1 (N.D. Ill. Aug. 31, 2015).

The PSQIA defines PSWP as "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements…which are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization…and which could result in improved patient safety, health care quality, or health care outcomes." 42 U.S.C.A. § 299b-21(7)(A).

There are, however, significant exclusions from that definition. PSWP "does not include a patient's medical record, billing, and discharge information, or any other original patient or provider record." 42 U.S.C.A. § 299b-21(7)(B)(i). Further, it does not include "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a PSO shall not by reason of its reporting be considered patient safety work product." 42 U.S.C.A. § 299b-21(7)(B)(ii).

As the Department of Health and Human Services ("HHS") more succinctly put it, "information prepared for purposes other than reporting to a PSO is not PSWP…" Patient Safety and Quality Improvement Act of 2005 – HHS Guidance, 81 Fed. Reg. 32655, 32656 (May 24, 2016); *see Crook v. Dart*, 408 F.Supp.3d 928 (N.D. Ill. 2019); *Johnson v. Cook Cty.*, 2015 WL 5144365 at *7 (N.D. Ill. Aug. 31, 2015); *Baptist Health Richmond, Inc. v. Clouse*, 497 S.W.3d 759 (Ky. 2016) ("In summary, a provider who participates in the Act may collect information within its patient safety evaluation system that complies with the Act and that also complies with state statutory and regulatory requirements. However, doing so does not relieve the provider from complying with those state requirements and, to the extent information collected in the provider's internal patient safety evaluation system is needed to comply with those state requirements, it is not privileged."); *Durante v. Adventist Health System/Sunbelt, Inc.* 2014 WL 12590141 at *4 (Fla. Cir. Ct. Oct. 1, 2014) ("In sum, documents are not patient safety work product if those documents were collected or maintained for a purpose other than submission to a PSO or for a dual purpose.").

Here, it is unclear from the information provided by CCS whether the Report was prepared for purposes other than reporting to a PSO and, therefore, excluded from PSWP. In support of its Motion, CCS submitted the Declaration of Sheri Saluga, Program Manager for Continuous Quality Improvement at Wellpath, LLC, CCS' successor.[2] [DN 108-3, 112-3]. Therein, Ms. Saluga

[2] CCS initially submitted Ms. Saluga's Declaration with her electronic signature, which CCS' attorney indicated he had permission to place on the document. [DN 108-3]. In its Motion for Protective Order, CCS explained that this was done because it was unable to obtain Ms. Saluga's notarized affidavit due to the COVID-19 pandemic. [DN 108 at 653]. Plaintiff argues that the Declaration is insufficient because it was electronically signed by CCS' counsel with permission, instead of bearing Ms. Saluga's actual signature. [DN 111 at 677-678]. In its Reply, CCS attaches an amended Declaration providing some additional information that is now purportedly hand-signed by Ms. Saluga. [DN 112-3]. This, however, is still insufficient given the unsworn, un-notarized nature of the Declaration. While CCS claims it could not file a notarized document due to the COVID-19 pandemic, the Court notes that on March 27, 2020, the Commonwealth of Kentucky announced that it would permit remote notarizations. https://kentucky.gov/Pages/Activity-stream.aspx?n=SOS&prId=304. Because the Court denies the instant Motion on other grounds, it will not address whether CCS should be entitled to an opportunity to cure any deficiencies with Ms. Saluga's Declaration.

broadly states that "Mortality & Morbidity Report and Reviews are assembled and developed for reporting to the Center for Patient Safety, a Patient Safety Organization." [DN 108-3, 112-3]. However, Ms. Saluga does not state that this specific report was assembled and developed for reporting to a PSO and, more importantly, she does not state that the Report was assembled and developed for the sole purpose of reporting to a PSO.

Further raising the specter that the Report may not be PSWP is the fact that the Report was produced by KDOC. CCS contends that KDOC's production of the Report does not evidence that the Report exists separately, or was collected separately, from the patient safety evaluation system. [DN 112-2]. This Court, however, disagrees. At the very least, KDOC's possession of the Report raises questions as to the Report's purpose(s) and whether it was created, at least in part, for reporting to KDOC. If it was created for reporting to KDOC, the Report would have been prepared for purposes other than reporting to a PSO and would not be PSWP. 81 Fed. Reg. 32655, 32656 (May 24, 2016). Later reporting such a document to a PSO does not then make that information PSWP. 42 U.S.C.A. § 299b-21(7)(B)(ii).

CCS attempts to argue that the Report may have been disclosed to KDOC impermissibly, in which case the Report would maintain its privilege. [DN 112-2 at 688]. This, however, assumes that the Report was PSWP and privileged to begin with. If the Report was produced to KDOC prior to it being placed in the PSO system, it would never have become PSWP; thus, there would be no privilege to maintain after its disclosure.

Despite these concerns, CCS has not provided the Court with the necessary information to effectively evaluate whether the Report is PSWP. CCS failed to state when the Report was created, the reason(s) why this specific Report was created, when it was provided to KDOC, and

why it was provided to KDOC. As the Report's drafter, CCS is the party best situated to provide this information, yet it has failed to do so.

CCS failed to meet its burden of establishing that the Report is PSWP. Without meeting that threshold requirement, CCS cannot demonstrate that the PSWP privilege applied and continues to apply to the Report. Accordingly, its Motion for Protective Order must be denied.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1. CCS' Motion to Strike Plaintiff's Response to CCS' Motion for Protective Order, [DN 112], is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Response to CCS' Motion for Protective Order shall not be stricken. CCS is granted leave to file its Reply and Supplemental Exhibit 4 in support of its Motion for Protective Order that is attached to the Motion to Strike. The clerk is directed to file CCS' Reply and Supplemental Exhibit 4 in the record.
2. CCS' Motion for Protective Order, [DN 108], is **DENIED** without prejudice.

**IT IS SO ORDERED.**

July 24, 2020

**Lanny King, Magistrate Judge**
**United States District Court**

c: Counsel of Record