UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:18-cv-00058-TBR-LLK

ALICE PENMAN , Administrator of Estate of Marcus Penman, Deceased        PLAINTIFF

v.

CORRECT CARE SOLUTIONS, LLC, et al.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Senior Judge Thomas B. Russell referred this case to the undersigned Magistrate Judge for ruling on all discovery motions. [Docket Number ("DN") 73]. Plaintiff is administrator of the estate of Marcus Penman, who died on April 25, 2017, while an inmate at Kentucky Statement Penitentiary ("KSP"). Defendant Correct Care Solution ("CCS") is a private entity that contracted with Kentucky Department of Corrections to perform the traditional state function of providing medical services to inmates. CCS seeks a judicial order quashing certain of Plaintiff's thirty (30) proposed Rule 30(b)(6) topics as "unduly burdensome," "overly broad and/or not reasonably calculated to lead to discovery of admissible evidence," [DN 135 at 5, 7], and Plaintiff has responded in opposition, [DN 138].

For the reasons below, Defendant CCS's motion to quash certain topics, [DN 135], is DENIED and CCS SHALL designate and prepare a Rule 30(b)(6) witness on all thirty (30) proposed topics except Topic 26. In lieu of Topic 26, CCS SHALL produce, for the current year, and the year immediately prior, state and federal income tax returns (as they become available), balance sheets, income statements, and all attached schedules.

### Plaintiff's complaint

In his Second Amended Complaint, Plaintiff alleges, among other things, that Marcus Penman died in Kentucky Statement Penitentiary ("KSP") on April 25, 2017, as a result of deliberate indifference to his serious medical needs (on the part of CCS employee Bruce Bauer, R.N.) in violation of the Eighth Amendment prohibition against cruel and unusual punishment. [DN 79 at ¶ 27]. Plaintiff further alleges

1

that the deliberate indifference reflects a custom or policy on the part of CCS, and she seeks punitive damages. *Id.*

Plaintiff asserts seven claims: (1) excessive use of force; (2) deliberate indifference to a serious medical and/or mental health need; (3) failure to intervene / failure to protect; (4) supervisory liability; (5) municipal liability; (6) negligence/wrongful death; and (7) intentional infliction of emotional distress/outrage. [DN 79].

### Standards governing Plaintiff's claims

In *Phillips v. PTS of America, LLC, et al.*, another recent case, CCS was a defendant, and the allegations against the nurse were similar to those against Nurse Bauer in this case. In *Phillips*, this Court granted CCS's motion for summary judgment because the plaintiff failed to establish a constitutional violation:

> A private entity may be held liable under § 1983 when that entity contracts with the state to perform a traditional state function, such as providing medical services to prison inmates. *West v. Atkins*, 487 U.S. 42, 54 (1988). When considering a § 1983 claim against a private entity, a court should undertake the same analysis outlined above for § 1983 claims against municipalities. *See … Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citation omitted). As noted above, a municipality generally cannot be held liable under § 1983 "[i]f no constitutional violation by the individual defendants is established." [*Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)] (citation omitted). Under the holding in *Watkins*, because the evidence does not support Plaintiffs' § 1983 claim against Nurse McKinney, Correct Care cannot be held liable under § 1983.

*Phillips v. PTS of Am., LLC*, No. 3:17-CV-603-CHB, 2021 WL 1220997, at *22 (W.D. Ky. Mar. 31, 2021).

More recently, the Sixth Circuit reaffirmed the above principles in a case that affirmed a district court's dismissal of an inmate's claim against Aramark Correctional Services, LLC, which were similar to Plaintiff's claims against CSS in this case, for failure to state a claim:

> That leaves Vartinelli's claim against Aramark. Aramark, of course, is a private entity, not a public body. But because Aramark contracted with the prison to provide basic necessities for inmates in place of the state of Michigan, it plausibly acted under color of state law for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54 … (1988). Yet even then, Vartinelli fails to plausibly allege, or allege at all for that matter, that Aramark maintained a policy or custom that disregarded inmates' medical needs, as he needed to do to state a claim against the company. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 … (1978).

2

*Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 871-72 (6th Cir. 2019).

This case, unlike *Phillips* and *Vartinelli*, is still in the discovery phase, and the parties have until December 1, 2021, to file dispositive motions. [DN 136, 139].

The Sixth Circuit concurs with the Fifth, Seventh, Ninth, and Eleventh Circuits that employees of private corporations in the business of administering correctional health care services are not entitled to assert qualified immunity. *Sanchez v. Oliver*, 995 F.3d 461, 467 (5th Cir. 2021) (citing, among other cases, *McCullum v. Tepe*, 693 F.3d 696, 704 (6th Cir. 2012)). Such private corporations and their "employees have known for some time now that they could be subject to liability without the benefit of qualified immunity [and] [f]ive circuit courts have said as much. *Id.* at 471 (citing *McCullum*).

### Standards governing Rule 30(b)(6) "topics" disputes

Rule 30(b)(6) of the Rules of Civil Procedure states, in pertinent part, that:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the **matters for examination** [i.e., topics] *(emphasis added)*. … The persons designated must testify about information known or reasonably available to the organization.

FED. R. CIV. P. 30. In this case, Plaintiff notified CCS of thirty (30) proposed Rule 30(b)(6) topics, which she intends to discuss at the Rule 30(b)(6) deposition. [DN 135-1].

The testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation, not the individual witness, and thus the testimony of a Rule 30(b)(6) witness is different from that of a "mere corporate employee." *Dawkins v. Knight Specialty Ins. Co.*, No. 1:20-cv-00091-GNS-HBB, 2021 WL 2346016, at *2 (W.D. Ky. June 8, 2021). The Rule 30(b)(6) witness does not give his or her own personal opinion but instead presents the corporation's position on a topic. *Id.*

When a corporation is served with a notice of a Rule 30(b)(6) deposition, it must produce a witness knowledgeable about the subject described in the notice and prepare that witness to testify, not simply to his or her own knowledge, but that of the corporation. *Id.* Thus, such a designee has a duty to obtain

information from corporate documents, current or prior corporate employees, or any other source reasonably available to the corporation. *Id.*

Regardless of the form a discovery request may take (be it by deposition or in written form), Rule 26 governs the scope of discoverable information. *Id.* Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* (quoting FED. R. CIV. P. 26(b)(1)).

Generally, a Rule 30(b)(6) topic is not deemed duplicative (and, hence, not proportional to the needs of the case) simply because it pertains to past discovery from regular fact witnesses. *White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019) (collecting authorities). Unlike fact witnesses, Rule 30(b)(6) witnesses "bind the entity that they are representing and are responsible for providing all of the relevant information known or reasonably available to the entity." *Id.*

A topic is not deemed overbroad simply because it enquires into the factual basis of a claim or defense. *Id.* In a Section 1983 context (as in *White* and the present case), a topic is not overbroad when it seeks information from a municipality regarding its custom or policy in effect at the time of the incident in question. *Id.*

Generally, past or future document production "is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Ronnoco Coffee, LLC v. Castagna*, No. 4:21-CV-00071 JAR, 2021 WL 2105000, at *2 (E.D. Mo. May 25, 2021).

## Analysis

As noted above, Plaintiff proposes thirty (30) Rule 30(b)(6) topics. [DN 135-1]. CCS argues that certain of the proposed topics, which CCS characterizes and places into seven (7) categories, are "unduly burdensome," "overly broad and/or not reasonably calculated to lead to discovery of admissible evidence." [DN 135 at 5, 7].

Organizationally, this Opinion, like Plaintiff's response, accepts CCS's categorization.

**1. Topics pertaining to CCS's contract with Kentucky Department of Corrections (Topics 10 - 13)**

Plaintiff seeks to discuss the following topics, which CSS characterizes as pertaining to its contract with Kentucky Department of Corrections ("KYDOC"):

10. The bidding process for the contract between CCS/Wellpath and the Commonwealth/KYDOC.

11. The negotiation of the contract between CCS/Wellpath and the Commonwealth/KYDOC.

12. The execution of the contract between CCS/Wellpath and the Commonwealth/KYDOC.

13. Any modifications, suspensions, or terminations of the contract between CCS/Wellpath and the Commonwealth/KYDOC.

[DN 135-1]. For the reasons below, CCS must designate and prepare a Rule 30(b)(6) witness on Topics 10 through 13.

The above type of information is generally admissible at trial. *See e.g. Huntley v. Wexford of Indiana, LLC*, No. 3:18-CV-205-PPS-MGG, 2018 WL 4039362, at *6 (N.D. Ind. Aug. 22, 2018) (The District Court determined that, at trial, Plaintiff may use the "contract between the State of Indiana and Wexford of Indiana, LLC., [the entity playing the role of CCS in this case] including all modifications, amendments, supplements").

CCS does not allege its contract with KYDOC is irrelevant or privileged. An individual who resists discovery that appears relevant "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Invesco Int'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). CCS has not alleged any such injury. Therefore, Plaintiff should be allowed to discuss these topics.

In this case, discovery closed on July 1, 2021. [DN 136]. To the extent CCS's argument is that these topics are duplicative because they pertain to past discovery from regular fact witnesses, it is unpersuasive because, unlike fact witnesses, Rule 30(b)(6) witnesses "bind the entity that they are representing and are responsible for providing all of the relevant information known or reasonably available to the entity." *White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019).

To the extent CCS's argument is that past or future document production may substitute for discussion of topics, it is unpersuasive because document production "is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Ronnoco Coffee, LLC v. Castagna*, No. 4:21-CV-00071 JAR, 2021 WL 2105000, at *2 (E.D. Mo. May 25, 2021).

This Opinion agrees with Plaintiff that CCS's reliance on *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000) is unpersuasive. [DN 138 at 8]. In *Smithkline Beacham Corp.*, the defendants requested Smithkline to designate a Rule 30(b)(6) witness to testify regarding "Smithkline's responses to Defendants' Interrogatories and requests for production, along with the subjects identified therein." *Id.* at *9. In other words, the defendants intended Smithkline's Rule 30(b)(6) witness to testify regarding the entire universe of written discovery. The defendants' Rule 30(b)(6) deposition notice was held to be "overbroad, unduly burdensome, and an inefficient means through which to obtain otherwise discoverable information." *Id.* at *10. In the present case, in contrast, Plaintiff is not seeking to discuss the entire universe of written discovery, merely topics pertaining to CCS's contract with Kentucky Department of Corrections.

### 2. Topics pertaining to CCS audits, surveys, studies, and reports (Topics 16 and 17)

Plaintiff seeks to discuss the following topics, which CCS characterizes as pertaining to its audits, surveys, studies, and reports:

> 16. All audits, surveys, studies and/or reports regarding medical and/or mental health care provided by CCS/Wellpath to inmates/prisoners from 2012 to the present, including, inter alia, audits, surveys, studies and/or reports conducted, created and/or commissioned by U.S. Immigration and Customs Enforcement ("ICE"), Commonwealth/KYDOC, CCS/Wellpath, the Federal Bureau of Investigation ("FBI"), the United States Department of Justice ("DOJ"), external consultants or accrediting bodies (e.g., National Commission on Correctional Health Care ("NCCHC"), American Correctional Association ("ACA"), etc.), Kentucky State Police, newspapers or any other federal or state agency.
>
> 17. Any and all communications, including internal communications and communications with relating to audits, surveys, studies and/or reports regarding medical and/or mental health care provided to inmates in KYDOC custody.

[DN 135-1]. For the reasons below, CCS must designate and prepare a Rule 30(b)(6) witness on Topics 16 and 17.

Topics 16 and 17 are relevant to Plaintiff's *Monell* theory of liability. One instance of potential misconduct is insufficient to show a clear and persistent pattern of constitutional violations. *Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019). However, such a pattern is shown by "enough similar incidents" sufficient to put officials on notice that persons "would be subject to constitutional deprivation" if the problem was not remedied. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989).

It is routine for courts to consider such audits, surveys, studies, and reports concerning similar incidents when deciding whether a plaintiff has presented evidence of an unconstitutional policy or custom. *See e.g. Burke v. Regalado*, 935 F.3d 960, 999 (10th Cir. 2019).

This Court has already denied CCS's motion to protect as privileged the Mortality & Morbidity Report and Review, in which CCS argued it is entitled to the patient safety work product privilege under the Patient Safety Quality Improvement Act of 2005 ("PSQIA"). [DN 122 denying DN 108]. Beyond the matters already decided, CCS does not allege CCS audits, surveys, studies, and reports are irrelevant or privilege. An individual who resists discovery that appears relevant "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Invesco Int'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). CCS has not alleged any such injury. Therefore, Plaintiff should be allowed to discuss these topics.

As noted above, similar incidents are relevant for purposes of establishing municipal liability under *Monell*, i.e., a municipal custom or policy. *See Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019). This Opinion concurs with Plaintiff that, while ultimately it is the custom or policy at the time of the incident giving rise to suit that matters, the scope of relevant information goes beyond that incident. [DN 138 at 6 citing *Green v. Fulton*, 157 F.R.D. 136, 141 (D. Me. 1994)].

### 3. Topics pertaining to CCS policies and changes in policies (Topics 18, 22 and 23)

Plaintiff seeks to discuss the following topics, which CCS characterizes as pertaining to its policies and changes in policies:

18. All CCS/Wellpath policies, procedures, practices, texts, manuals, memoranda, training materials and/or protocols in effect from 2016 to present that relate to:

a) [Withdrawn by Plaintiff]
b) [Withdrawn by Plaintiff]
c) [Withdrawn by Plaintiff]
d) Medical OR mental health assessments OR evaluations of prisoners
e) Medical OR mental health care and treatment of prisoners
f) Medical OR mental health care AND treatment of acute psychiatric patients, INCLUDING those requiring evaluation OR treatment
g) Supervision of prisoners with medical or mental health needs
h) Documentation of prisoners' medical OR mental health condition
i) Placement OR transfer of prisoners with medical or mental health needs
j) Suicide prevention
k) Specific discipline of employees OR contractors for the violation of prisoners' civil rights OR failure to provide adequate medical OR mental health care OR failure to provide adequate supervision of prisoners with a medical or mental health condition
l) Evaluation OR treatment of individuals in real OR potential need of emergency hospitalization
m) Transport of prisoners who appear to have a significant, serious, OR emergent medical or mental health problem to a supporting medical facility
n) Medical OR mental health screening, INCLUDING intake screening, of prisoners
o) Complete emergency and medical health care services
p) Provision of needed prescription medication, INCLUDING psychotropic medication, for prisoners
q) Head, neck OR spinal injuries
r) Neurological deficits
s) The provision of diagnostic testing or procedure (e.g., MRI, CT scan)
t) Any peer review processes
u) Mortality reviews
v) Comprehensive Quality Assurance ("CQA"), quality assurance, or continuous quality improvement ("CQI")
w) [Withdrawn by Plaintiff]
x) Prisoners' medical or mental health complaints, grievances, or requests for medical OR mental health
y) Supervision of nursing staff
z) Taking and recording of vital signs
aa) Resuscitation of prisoners who have stopped breathing OR whose heart has stopped beating
bb) Referral or admission of prisoners to the infirmary/medical unit
cc) Provision of medical OR mental health care to prisoners in a segregation unit
dd) The prescribing AND provision of prescription medication, INCLUDING psychotropic medication, to prisoners housed in a segregation unit
ee) The provision of food, nourishment OR sustenance for prisoners

      ff) The provision of water OR other hydration for prisoners
      gg) Approving use OC spray, Taser, or restraint chair.
      hh) Cell Entry Teams
      ii) Use of OC Spray
      jj) Use of tasers
      kk) Use of a restraint chair
      ll) Use of a spit mask
      mm) Use of metal leg restraints

22. Any changes in policy or practice – from 2016 to the present – made or implemented by CCS/Wellpath to alleviate risks to the health or safety of inmates in KYDOC custody.

23. Any changes in policy or practice – from 2016 to the present – made or implemented by CCS/Wellpath to alleviate risks to the health or safety of inmates its employees/agents provide medical assessment and care.

[DN 135-1]. For the reasons below, CCS must designate and prepare a Rule 30(b)(6) witness on Topics 18, 22 and 23.

Admittedly, the above materials cover a lot of ground. However, "[d]istrict courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 24, 2020).

Plaintiff must show, not only that the decedent was denied adequate medical care, but that Defendants were deliberately indifferent, meaning that they "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 3084953, at *2 (D. Md. June 19, 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, there are a number of ways in which the documents and testimony sought could reasonably lead to the discovery of admissible evidence. *Id.* First, any failure on behalf of CCS officials and individual defendants to address specific healthcare issues made known to them during the course of peer review evaluations or follow-up investigations could help Plaintiff show that CCS knowingly disregarded an excessive risk posed to the prisoners it treated. *Id.* Second, although some of the records and testimony in question

9

may not be specific to the decedent's care, medical personnel's review and response to the level of care administered to other inmates may reveal a custom, policy, or practice and may provide insight into the level of training provided to medical staff. *Id.* In other words, such evidence could help Plaintiff meet her burden of proof under *Monell*. *Id.* Third, the documents and testimony requested could reasonably lead to information about the circumstances of the death and the conduct that took place thereafter. *Id.*

CCS does not allege CCS policies and changes in policies are irrelevant. An individual who resists discovery that appears relevant "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Invesco Int'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). CCS has not alleged any such injury. Therefore, Plaintiff should be allowed to discuss these topics.

### 4. Topics pertaining to medical care provided to Mr. Penman (Topics 19 and 20)

Plaintiff seeks to discuss the following topics, which CCS characterizes as pertaining to the medical care provided to Mr. Penman:

> 19. The medical and mental health care provided to Marcus Penman by CCS/Wellpath personnel during his incarceration while he was in KYDOC custody.
>
> 20. Any investigation into the medical care provided to Marcus Penman by CCS/Wellpath personnel during his incarceration while he was in KYDOC custody.

[DN 135-1]. For the reasons below, CCS must designate and prepare a Rule 30(b)(6) witness on Topics 19 and 20.

CCS does not allege that Plaintiff's own medical records during his incarceration are irrelevant or privileged. As noted above, CCS's response to prior investigation, if any, may indicate whether it was deliberately indifferent at the time of the death. *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 3084953, at *2 (D. Md. June 19, 2017). Therefore, Plaintiff should be allowed to discuss these topics.

### 5. Topics pertaining to CCS's financial condition and corporate family (Topics 6, 7 and 26)

10

Plaintiff's Second Amended Complaint seeks punitive damages, [DN 79 at 21], and Plaintiff seeks to discuss the following topics, which CCS characterizes as pertaining to its financial condition and corporate family:

> 6. Identity of companies within CCS/Wellpath corporate family.
>
> 7. Total number of corrections facilities at which CCS/Wellpath is currently providing medical services.
>
> 26. The financial condition (including the net worth, revenues and balance sheet) of CCS/Wellpath.

[DN 135-1].

This Opinion discusses Topics 6 and 7 after discussing Topic 26.

CCS need not designate a witness on Topic 26. However, CCS shall "produce, for the current year, and the year immediately prior, state and federal income tax returns (as they became available), balance sheets, income statements, and all attached schedules." *Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390 (W.D. Ky. Dec. 12, 2017).

Like CCS, Corizon Health was a healthcare provider for correctional facilities. *Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17-CV-00035-TBR, 2018 WL 2768883, at *1 (W.D. Ky. June 8, 2018). CorrecTek was a licenser of electronic medical records and electronic medication administration records software to correctional healthcare providers. *Id.* Corizon Health alleged fraud, Consumer Protection Act violations, negligent misrepresentation in a commercial transaction, and breach of contract. *Id.* Like Plaintiff in the present action, Corizon Health sought punitive damages, and this Court ruled that:

> Each Defendant shall produce, for the current year, and the year immediately prior, state and federal income tax returns (as they became available), balance sheets, income statements, and all attached schedules ….

2017 WL 7693390, at *3.

This Court explained it would follow the majority rule and not require a pre-discovery prima-facie showing of entitlement to punitive damages:

> … Under federal law, … evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 … (1981).
>
> A growing number of courts require a prima facie showing of entitlement to, or an evidentiary basis for the recovery of, punitive damages prior to allowing discovery of a defendant's financial status, and other courts delay discovery altogether on punitive damages until after dispositive motions have been decided. The majority of federal courts to have considered the question, however, have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages.
>
> … "[T]he scope of discovery is within the sound discretion of the trial court." *S.S. v. Eastern Kentucky University*, 532 F.3d 445, 451 (6th Cir. 2008). Most courts addressing the proper scope of financial discovery have limited such discovery "to the period providing a picture of the defendant's **current** *(emphasis added)* financial condition and net worth, usually the most recent year or two." *Id.*

*Id.* (collecting authorities).

CCS must designate and prepare a Rule 30(b)(6) witness on Topics 6 and 7. Evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded. *Id.* citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981). The identity of companies within the CCS/Wellpath corporate family and the total number of corrections facilities at which CCS/Wellpath is currently providing medical services are relevant to the issues of CCS's financial worth and potential punitive damages.

### 6. Topic pertaining to CCS authentication of documents (Topic 25)

In her response, Plaintiff states that "[b]ased on CCS's offer to enter a stipulation as to the authenticity of documents it has produced, Plaintiff withdraws Topic #25." [DN 138 at 16].

### 7. Topic pertaining to CCS staffing levels (Topic 27)

Plaintiff seeks to discuss Topic 27, which CCS characterizes as pertaining to: "Steps taken to ascertain proper staffing levels of CCS/Wellpath employees at the KSP." [DN 135-1]. For the reasons below, CCS must designate and prepare a Rule 30(b)(6) witness on Topic 27.

Deliberate indifference claims against private corporations who contract to provide inmate medical care (and such claims against CCS in particular) typically involve claims of inadequate staffing. *See e.g. Meirs v. Ottawa Cty.*, 821 F. App'x 445, 455 (6th Cir. 2020) (Meirs argued that, "[d]ue to this inadequate staffing [by CCS] ... violations in corporate policies requiring physician oversight for various medical procedures was inevitable."); *Sanders v. Correct Care Sols., Inc.*, No. 3:15-CV-01526, 2017 WL 11476388, at *2 (M.D. Tenn. Dec. 29, 2017) ("Staffing at CJC [Davidson County Criminal Justice Center] is directed by CCS's contract with Davidson County [and] [t]he budget for staffing is determined by the revenue generated from the average daily inmate population versus the required staffing and what CCS has to pay for that staffing.").

CCS does not allege that staffing at KSP at the time of Mr. Penman's death is irrelevant or privileged. Therefore, Plaintiff should be allowed to discuss this topic.

### Order

For the foregoing reasons, Defendant CCS's motion to quash certain topics, [DN 135], is DENIED and CCS SHALL designate and prepare a Rule 30(b)(6) witness on all thirty (30) proposed topics except Topic 26. In lieu of Topic 26, CCS SHALL produce, for the current year, and the year immediately prior, state and federal income tax returns (as they become available), balance sheets, income statements, and all attached schedules.

July 23, 2021

Lanny King, Magistrate Judge
United States District Court