# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH

| | |
|---|---|
| ALICE PENMAN, Administrator of Estate of Marcus Penman, Deceased, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) Case No. 5:18-cv-00058 (TBR) ) |
| CORRECT CARE SOLUTIONS, LLC, et al., | ) ) |
| *Defendant.* | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon two motions.

Defendants Randy White, Cookie Crews, Josh Patton, Deborah Coleman, James Corley, Jason Denny, Robert Harris, Michael Lamb, Steven E. and Steven H. Sargent have filed a Motion to Preclude or Limit Testimony of Dr. Jeffery Schwartz and Dr. Richard M. Sobel, (White, et al., Mot. in Lim.), Dkt. 195. Plaintiff Alice Penman, as the Administrator of the Estate of Marcus Penman, has responded, (Resp. to White, et al.), Dkt. 207.

Defendant Kerwyn Walston has also filed a Motion to Exclude or Limit Plaintiff's Experts, (Walston Mot. in Lim.), Dkt. 196. In that motion, Walston incorporates the entirety of White., et al., Mot. in Lim. *See* Walston Mot. in Lim. at 1. Plaintiff has responded, (Walston Resp.), Dkt. 208.

As such, briefing is complete and the motions are ripe for adjudication.

For the reasons stated herein, it is **ORDERED** that the White, et al., Mot. in Lim., Dkt. 195, is **GRANTED IN PART AND DENIED IN PART**; and the Walston Mot. in Lim., Dkt. 196, is **GRANTED IN PART AND DENIED IN PART**.

1

I.       FACTUAL BACKGROUND

A detailed recitation of the facts can be found in the Court's contemporaneously filed opinion ruling on Defendants' motions for summary judgment. The facts therefore do not need to be repeated in detail here. The gist of the matter, however, is that Marcus Penman, an inmate at the Kentucky State Penitentiary (KSP), died while officers tried to restrain him. *See* Amended Complaint (Am. Compl.), Dkt. 79. Penman's widow has now filed this lawsuit. *See id.*

II.      TESTIMONY OF DR. SCHWARTZ, PLAINTIFF'S USE OF FORCE EXPERT

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), district courts must act as gatekeepers to ensure that expert testimony is both reliable and relevant. *See Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Although Rule 702 commonly applies to scientific expert testimony, "it applies equally to witnesses whose expertise stems from other types of specialized knowledge," which gives a district court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," provided, of course, "that the gatekeeping mandate of *Daubert* is followed." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 152 (1999)). Importantly though, "[t]he test of reliability is 'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Kumho Tire*, 526 U.S. at 150). The Sixth Circuit has instructed "that the *Daubert* factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.' " *Id.* (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

In the Sixth Circuit, there are three stages to a Rule 702 analysis. First, "the witness must be qualified by knowledge, skill, experience, training, or education." *Rios*, 830 F.3d at 413 (quotations and citations omitted). Second, "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Ibid.* Third, "the testimony must be reliable." *Ibid.* Both the second and third stages are at issue today.

### A. *White, Coleman, and Crews' Motion*

Defendants ask the Court to preclude different parts of Dr. Schwartz' testimony for five reasons. *See* White, et al., Mot. in Lim. at 15–18.

First, Defendants assert that Dr. Schwartz's testimony regarding conduct of the KDOC, KSP, and other state agencies is not relevant to this case. *See id.* at 7–8. Specifically, Defendants seek to exclude two of Dr. Schwartz's opinions. First is Dr. Schwartz's opinion that the KDOC or KSP was "on notice" of use of force issues, prison healthcare deficiencies, or other issues. *See id.* at 8. Second is Dr. Schwartz's testimony about whether the KDOC recognized its responsibility for Penman's death. *See id.* at 8. Without the benefit of additional information, the Court declines to rule on this motion at this time. Instead, this objection can be raised at either the final pretrial conference or the trial itself. Further, Plaintiff would need to provide

3

proper foundation. Dr. Schwartz may not attempt to speculate as to what KDOC was thinking. Before allowing such testimony there must be more foundation.

Second, Defendants claim that Dr. Schwartz's testimony lacks a reliable foundation. *See* White, et al., Mot. in Lim. at 4. To support this argument, Defendants claim that Dr. Schwartz "cites no sources or . . . national correctional standards (such as ACA or NCCHC) to support []his conclusion[s]" regarding the use of pepper spray. *Id.* at 6–7. Defendants also assert that Dr. Schwartz's testimony is unreliable because he "has not been subjective to recent peer review." *Id.* at 7. However, similar experts have been permitted to testify in other cases challenging prison conditions. *See, e.g.*, *Wilson v. Maricopa Cty.*, No. CV-04-2873-PHX-DGC, 2006 WL 3051870, at *2 (D. Ariz. Oct. 26, 2006) ("Operation of the jail is not a scientific process subject mathematical measurements or laboratory analyses."); *Ruiz v. Johnson*, 37 F. Supp. 2d 885, 890 (S.D.Tex.1999), *rev'd and remanded on other grounds*, 243 F.3d 941 (5th Cir. 2001) ("[A]n expert's evaluation of a prison system's quality of medical care, use of force, or protection of inmates is not the type of testimony that necessarily implicates Daubert's requirement of scientific methodology."). The issue of peer review is not as pertinent in this case, where the relevant reliability concerns focus upon personal knowledge and experience. *See Kumho Tire*, 526 U.S. at 150. Noting that fact Defendants do not dispute that Dr. Schwartz is qualified to opine on correctional operations issues, and that Dr. Schwartz did discuss correctional standards used by the American Correctional Association (ACA) and the National Commission on Correctional Health Care (NCCHC), the Court concludes that Dr. Schwartz's opinions are reliable enough to be admitted at trial. *See* Resp. to White, et al., Mot. in Lim. at 4, 11; *see also* Schwartz Report, Dkt. 209-14, at 6.

Third, Defendants maintain that Dr. Schwartz lacks qualifications to opine on Penman's medical and mental health conditions and corresponding treatment. *See* White, et al., Mot. in Lim. at 8–10. Plaintiff seems to admit to this, acknowledging that "Dr. Schwartz . . . explicitly states in his report that he is 'not a medical expert.'" Resp. to White, et al., Mot. in Lim. at 5. However, Plaintiff claims that Dr. Schwartz can rely upon the testimony of other expert witnesses, such as Dr. Sobel, *see infra*. *See id.* (citing *Momeni-Kuric v. Metro. Prop. & Cas. Ins. Co.*, No. 3:18-CV-00197-RGJ, 2019 WL 3416677, at *3 (W.D. Ky. July 29, 2019)). Plaintiff's argument is misplaced. A non-medical expert can rely upon medical expert testimony when that non-medical expert must base his or her opinion on the information contained in the medical opinions. *See Momeni-Kuric*, 2019 WL 3416677, at *3. Therefore, to the extent that Dr. Schwartz relies upon medical expert testimony to opine about information not necessary to his use of force testimony, that testimony must be precluded.

Fourth, Defendants assert that Dr. Schwartz improperly opines that claims at issue have been proven by Plaintiff. *See* White, et al., Mot. in Lim. at 11–13. Here, Defendants cite to "numerous opinions" "expresse[d]" by Dr. Schwartz. *Id.* at 12. Defendants are correct that Dr. Schwartz may not invade the province of the jury. However, the Court reserves ruling on this issue, as it feels that it must know the purpose and context of the proposed testimony before it can make an informed ruling. However, Dr. Schwartz may not opine as to his opinion as to whether the claims at issue have been proven. He may express his criticism of action and the jury can determine if claims at issue have been proven.

Fifth, Defendants argue that Dr. Schwartz is presenting personal speculation to the jury under the guise of expert opinion. *See* White, et al., Mot. in Lim. at 13–15. Specifically, Defendants seek to exclude Dr. Schwartz's statement that "the Coroner's finding that [] Penman

5

died of asphyxiation caused by compression of the neck may have been in large part a result of the inappropriate use of the shield by Officer Sargent." *Id.* at 14.  The Court need not address this issue, because, as Defendants note, this is would constitute impermissible medical expert testimony that Dr. Schwartz is not qualified to give, *supra*.  *See id.*

### B.  *Walston's Motion*

Walston seeks to limit Schwartz' testimony in numerous ways, oftentimes failing to specify exactly why that testimony is inadmissible.  *See* Walston Mot. in Lim.  Many of these requests focus on how Dr. Schwartz's conclusions and methodologies are unreliable and unsupported by the factual record.  *See id.*  While Walston may wish to attack Dr. Schwartz's expertise and conclusions, that is the purpose of cross-examination, not a motion in limine.  *See, e.g.*, *Anderson v. Wheeler*, No. 7:17-CV-185-CHB, 2019 WL 9362630, at *1 (E.D. Ky. Aug. 2, 2019).  For that reason, the Court denies each of these requests at this time.

However, Walston does articulate two requests that merit separate consideration.  First, Walston asserts that Dr. Schwartz should be prohibited from offering an opinion or criticism that Walston failed to assemble a properly trained team.  *See* Walston Mot. in Lim. at 5.  Here, Walston relies on Dr. Schwartz's statement that Walston "had to go with whatever he could put together."  *Id.*  While this might undermine some of the claims against Walston, this critique is also better suited for cross-examination.  Further, there must be factual support for his speculation that Walston "had to go with whatever he could put together."

Second, Walston claims that Dr. Schwartz should be prohibited form offering an opinion or criticism that Walston used the taser in dart mode in a wrongful way.  *See* Walston Mot. in Lim. at 6.  Here, Walston makes much of the fact that Dr. Schwartz acknowledges that he does not know if the probes were in contact with Penman for the entirety of the 18-second application.

*See id.* at 5–6. Again, however, that type of critique of Dr. Schwartz' conclusion is better suited for cross-examination.

The Court reserves ruling on each of Walston's objections until it has the benefit of context during trial.

### III.     TESTIMONY OF DR. SOBEL, PLAINTIFF'S MEDICAL EXPERT

Like Dr. Schwartz, Dr. Sobel will testify as an expert witness. As such, the Court incorporates the same legal standard language set out *supra* Part II.

Defendants ask the Court to preclude different parts of Dr. Sobel's testimony for three reasons. *See* White, et al., Mot. in Lim. at 15–18.

First, Defendants claim that Dr. Sobel is a medical doctor, not a use of force expert. *See id.* at 15; *see also* Walston Mot. in Lim. at 1. Defendants therefore seek to preclude Dr. Sobel from offering opinions pertaining to use of force. *Ibid.* Plaintiff does not dispute this assertion, acknowledging that Dr. Sobel is only a medical expert. *See* Resp. to White, et al. As the parties agree on this issue, the Court will not permit Dr. Sobel to offer expert opinions on use of force issues.

Second, Defendants argue that some of Dr. Sobel's opinions constitute improper legal conclusions and do not substantially assist the jury. *See* White, et al., Mot. in Lim. at 16–17; *see also* Walston Mot. in Lim. at 1. Specifically, Defendants claim that Dr. Sobel should be precluded form offering any testimony regarding the objective reasonableness of the Defendants' actions or inactions, or from offering testimony regarding breaches of standards of care by corrections officers, KDOC staff, the KDOC, or other agencies. *Ibid.* The Court agrees. Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."

However, as the Advisory Committee Notes to Rule 704 make clear, the ultimate-issue rule does not permit expert opinion testimony on the ultimate legal conclusion that the jury must reach.

Sixth Circuit case law illustrates this point. For example, in *DeMerrell v. City of Cheboygan*, the Sixth Circuit held that an expert's testimony about whether a defendant's conduct constituted excessive force was properly excluded because it merely expressed a legal conclusion. 206 Fed. App'x. 418, 426–27 (6th Cir. 2006). There, the plaintiff's expert opined that the defendant's conduct was "objectively unreasonable" and that the defendant's actions were "improper and unnecessary." *Id.* at 426. Noting that "objective reasonableness is the precise legal standard," the court concluded that such testimony was improper under Rule 704(a) because the expert's opinions "were improper legal conclusions" that went "beyond 'stating opinions that suggest the answer to the ultimate issue.' " *Id.*; *see also In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 829–30 (N.D. Ohio 2010) (explaining that testimony as to the breach of duty encompasses legal conclusions and finding expert opinions regarding a breach of the applicable standards impermissible).

Here, in a case involving excessive force, deliberate indifference, failure to intervene, supervisory liability, and negligence claims, Dr. Sobel opines that "the staff of KY DOC have recklessly disregarded [] Penman's needs for emergency psychiatric stabilization." *See* Sobel Report, Dkt. 195-3, at 15. Dr. Sobel also describes the officers' use of force as "improper," "reckless," "pointless," and "needless[]." *Id.* at 13. And in his report, Dr. Sobel concludes that the Defendant Officers, Baur, the KDOC, and mental health counselors breached their applicable standards of care. *See id.* at 12–14. Such testimony would invade the province of the court to determine the applicable law and to instruct the jury as to that law. *See Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

8

Plaintiff seems to admit that some of this testimony is impermissible, "acknowledge[ing] that some of Dr. Sobel's 13 opinions are more appropriate for a use of force expert." Resp. to White, et al. at 13; *see also supra*. Plaintiff concludes, however, that much of the challenged testimony is still admissible because it "directly relate[s] to Dr. Sobel's expertise in emergency medicine." Resp. to White, et al., at 13. That may be so, but in a case like this, an expert cannot offer ultimate legal conclusions simply because they relate to his area of expertise. *See DeMerrell*, 206 Fed. App'x. at 426–27; *see also In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d at 829–30. Nothing in this opinion precludes Dr. Sobel from testifying about medical issues. For example, Dr. Sobel is still permitted to testify that "[a]nterior compression of [Penman's] neck result[ed] in tracheal compression and hypoxia." Sobel Report at 13. What Dr. Sobel can't say is that this compression was a faulty restraint procedure. *See id.* at 12–13.

Third, Defendants claim that Dr. Sobel's testimony regarding conduct of the KDOC, KSP, and other state agencies is not relevant to this case. *See* White, et al., Mot. in Lim. at 18; *see also* Walston Mot. in Lim. at 1. According to Defendants, because these agencies are not parties to this case, this testimony would confuse the jury more than it would advance material issues. *Ibid.* Plaintiff responds that Dr. Sobel's opinions regarding KDOC and KSP are crucial to the supervisory liability claims. Resp. to White, et al., at 13. However, because the Court has granted summary judgment in favor of Defendants White, Crews, and Coleman, this testimony is no longer relevant. *See id.*; *see also* Summ. J.

In sum, Defendants' request to preclude Dr. Sobel's testimony is granted only to the extent that it seeks to preclude use of force testimony and opinions about legal conclusions; however, Defendant's request is denied to the extent that it seeks to preclude testimony regarding conduct of the KDOC, KSP, and other state agencies.

## IV. ADDITIONAL MOTIONS IN LIMINE

### A. *Expert Reports*

Defendants move the Court to prohibit the admission of expert reports into evidence in this case. *See* White, et al., Mot. in Lim. at 18–19; *see also* Walston Mot. in Lim. at 1. Citing *Wright v. Premier Elkhorn Coal Co.*, 16 S.W.3d 570, 572 (Ky. App. 1999) and *Shadrick v. S. Health Partners, Inc.*, No. 4:11CV-00033-JHM, 2016 WL 4555611, at *3 (W.D. Ky. Aug. 31, 2016), Defendants claim that such reports are inadmissible hearsay. *See* White, et al., Mot. in Lim. at 18–19; *see also* Walston Mot. in Lim. at 1. Plaintiff does not oppose this portion of Defendants' motions. *See* Resp. to White, et al., Mot. in Lim.; *see also* Walston Mot. in Lim. Accordingly, the Court grants this part of Defendants' motions.

### B. *Referring to Defendants as the State of Kentucky*

Defendants move the Court to prohibit Plaintiff from referring to the Defendants in a way that would equate them with the Commonwealth of Kentucky or the KDOC, e.g., "Kentucky" or "KDOC." *See* White, et al., Mot. in Lim. at 19; *see also* Walston Mot. in Lim. at 1. Defendants claim that permitting Plaintiff to refer to Defendants in such a way could lead the jury to believe that entering a judgment against the Defendants would actually be a judgment against Kentucky or the KDOC. *Ibid.* According to Defendants, this would be unfairly prejudicial because neither the State of Kentucky nor the KDOC are required to indemnify Defendants for any judgment entered against them in their individual capacities. *Ibid.* Plaintiff does not respond to this request. *See* White, et al., Mot. in Lim. at 18–19; *see also* Walston Mot. in Lim. at 1. The Court believes that referring to Defendants in such a way does present risks of unfair prejudice. *Cf. Othman v. Benson*, No. 13-CV-4771 (NGG) (SJB), 2019 WL 1118035, at *4 (E.D.N.Y. Mar. 11, 2019) (excluding evidence that defense counsel were attorneys for the city on the grounds that

10

such a reference would be unfairly prejudicial because it may lead a jury to believe that the defendants would be indemnified by the city). As such, Defendants' request is granted.

### C. *Referring to Defendants in the Collective*

Defendants move the Court to prohibit Plaintiff from referring to the Defendants collectively as "they" or "them." *See* White, et al., Mot. in Lim. at 20; *see also* Walston Mot. in Lim. at 1. Defendants claim that permitting Plaintiff to refer to Defendants in such a way would be unfairly prejudicial because it makes it more likely that a jury would find one Defendant liable for another Defendant's conduct. *Ibid.* Although Plaintiff does not respond to this argument, the Court denies this request. *See* White, et al., Mot. in Lim. at 18–19; *see also* Walston Mot. in Lim. at 1. As other district courts have held, entire prohibitions on collective references are often "overbroad and burdensome." *Joan Cravens, Inc. v. Deas Constr., Inc.*, No. 1-15-CV-385-KS-MTP, 2017 WL 217650, at *3 (S.D. Miss. Jan. 18, 2017). Indeed, the risk of unfair prejudice is greatly diminished by the fact that the jury will receive instructions that explain the claims against each specific Defendant. *See id.* The Court does suggest that Plaintiff refer to Defendants individually in most contexts to avoid confusion.

### D. *Referring to the death of Steven McStoots*

Defendants move the Court to prohibit Dr. Schwartz from offering any testimony, or even making any reference to Steven McStoots by name or alluding to the facts of the McStoots case. *See* White, et al., Mot. in Lim. at 21–22; *see also* Walston Mot. in Lim. at 1. According to Defendants, permitting such testimony would be unfairly prejudicial because the McStoots case is still pending, McStoots' cause of death is currently undetermined, and cell entry team here did not have knowledge of the McStoots case. *Ibid.* Plaintiff does not directly respond to this argument. *See* White, et al., Mot. in Lim. at 18–19; *see also* Walston Mot. in Lim. at 1.

However, in the responses, Plaintiff does cite McStoot's death as evidence to support the supervisory liability claim.  *See* Resp. to Coleman, et al., Mot. for Summ. J., Dkt. 210, at 41.  As stated *supra*, McStoots' death is only relevant to the supervisory claims against Defendants White, Crews, and Coleman.  However, those supervisory liability claims have been dismissed.  *See* Summ. J.  As such, McStoots' death is now irrelevant, meaning that Plaintiff is prohibited from referencing it.

### V.    CONCLUSION

Accordingly, it is **ORDERED** that the White, et al., Mot. in Lim., Dkt. 195, is **GRANTED IN PART AND DENIED IN PART**; and the Walston Mot. in Lim., Dkt. 196, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**

Thomas B. Russell, Senior Judge
United States District Court

March 7, 2022